The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, everyone. The first argued group of cases are the Consolidated Apple Incorporated against Qualcomm Incorporated. Numbers 20-1683, 20-1763, and 20-1827. The arguments were consolidated to facilitate covering the common issues. And let's start with those. Ms. Degnan, are you ready to proceed? Yes, your honor. May it please the court. No, I was going to say please proceed. And the common issues, at least as we see it from the briefs, are the issues of standing. So I would suggest starting with those questions. Yes, your honor. Good morning. Lauren Degnan for Apple. So we're all aware of the court's previous decision on Apple's standing and the other IPRs. So unless the court would like to start with its questions, I thought I would focus on an issue that was not addressed in this earlier opinion. Apple's request to vacate the PTAB's decision in the 1827 appeal, and we make that request with respect to the other two appeals today. So starting with that issue. Although the mungingware-type vacature arises where cases become moot while the case is on appeal, we'd ask this court to extend that approach to the facts of this case, which do include an element of mootness. Specifically, there was indisputably a case of controversy between the parties over the validity of the patents in each appeal. And according to this court's interpretation of men immune in the prior decision, that case of controversy went away by virtue of the settlement and the dismissal of the cases, the district court cases. In other words, the case of controversy was mooted. In the mungingware-type cases, courts vacate essentially for public policy reasons. Ms. Stegman, this is Judge Prost. Can I ask you about that? Because what about U.S. Bancorp, which seems to limit, as I read it, to mungingware? Mungingware is where the other side sort of ends the case. Isn't this more like Bancorp, in which you agree to the settlement before the appeal, and therefore isn't vacature sort of the unlikely remedy versus the one in mungingware? So, Judge Prost, we would say our case is more like a later Supreme Court case, Alvarez v. Smith, 558 U.S. 87, with distinguished Bancorp, and granted vacature even where there was a settlement of different litigation that ultimately mooted the case that was on appeal. And for some context, in that case there was a federal civil rights suit, where the plaintiffs argued they were deprived a timely hearing to contest forfeiture of their property. But there were separate state court forfeiture proceedings, and the Supreme Court ultimately found that the civil rights case that was being appealed was mooted by the resolution of the underlying forfeiture proceedings, even though there was at least one of them that was resolved by settlement by one of the plaintiffs in the civil rights case. Nevertheless, the Supreme Court vacated the judgment below, saying that that case, those circumstances, more loosely resembled mootness through happenstance rather than through settlement, at least the kind of settlement that the Supreme Court considered in Bancorp. Can I ask you just a process question? We've got a lot of paper in this case, as we do in the many cases we're hearing this week. Did you call that to the court's attention in any of the filings we've had post, you know, with regard to the dismissal, et cetera? I know you moved to vacate the argument, but did you cite this case in any of your filings? No, this Alvarez case we did not cite in our filings. We raise it now in response to Qualcomm's Rule 20HA letter. And, of course, in response to your question. I also, just following up on that, I, in looking at your briefs, I understand you to have raised the request to vacate in one of these appeals in your reply brief, but you didn't in the other appeals until today. Is that correct? That is correct, Ms. Stoll. And do you agree that under our prior decision in AFL-UX standing? So, Your Honor, I would say that the prior decision did address many of the arguments that are raised in these current appeals. There is one argument raised in these appeals that we believe the opinion does not specifically address. And that, I'll do it briefly because I don't want to, you know, if you think it's retreading old ground, I don't want to do that. But the prior opinion did not explain why the threat of liability, if Apple ceases the ongoing payment and the agreement is terminated, is not a sufficient injury to support standing. The opinion in Section 2B goes on about what would happen at the time the agreement expires, five to seven years from now, and determines that injury at that time would be too speculative. But, again, we also, we argue in these appeals, and candidly it was mentioned in the other ones too, that termination due to nonpayment is another circumstance. But, wait a minute, this all sounds very familiar because wasn't this at the heart or one of the issues at the heart of your petition for rehearing en banc, which was denied by the court? That's exactly right, Your Honor. So, how does this differ? I mean, I thought you all were recognizing that the Apple Qualcomm case covered these cases and that you were simply waiting to see if rehearing was denied. So, are you suggesting that this is an issue that really wasn't resolved, that this is something new and different that was never considered a part parcel of the original Apple Qualcomm case? And so, two responses to that, Your Honor. First is that this court's precedent, like Union Electric at 363 Fed Third 1292, is clear that unless an earlier opinion explicitly addresses and decides an issue, then it's not binding on a future panel. And we would say this particular nuance was not specifically addressed. But the second thing I'll say is we do not disagree that the operative facts are the same, the agreement is the same, the settlement is the same, the decisions are the same. So, you think that based on this particular nuance, this panel could achieve a result that's contrary to Apple I and we wouldn't be bumping it up against our precedent? You really think this panel has the ability to do that based on what you call the nuance? I would say our position is that this particular argument was not addressed by the panel in the prior decision and, therefore, it would be something this court could consider. So, if I could, again, I'm happy to answer your questions, but if I could go back to the vacature issue. Yes, please do. I wanted to explain why our case involves important policy reasons why these decisions should be vacated if the court determines and follows, you know,  First, vacature would take Section 315E estoppel off the table and that would allow Apple to fully challenge validity in any future infringement action. And there's a strong public policy in eliminating invalid patents. That policy is a longstanding one. Moreover, the parties agreed that the IPRs would proceed to appeal and after the ability to appeal, any estoppel from Section 315E would be unfair. And, finally, failure to vacate in these sorts of circumstances could discourage settlement in district court litigation. Can I ask you, Ms. Stegman, this is Judge Prost again. We've had a series of cases where we've concluded, starting with Consumer Watchdog, I guess, that there's no standing to appeal. How would, if we said vacature is appropriate in this case because of the kind of policy questions you've raised, wouldn't that apply to just about every case in which we conclude that there's no standing? Actually, Your Honor, I think it would not because our circumstances are somewhat unique in that I think it's undisputed there was a case of controversy that was mooted. So this would not apply to the run-of-the-mill no standing because there was never a case of controversy. But in our case, we were sued on these particular patents at issue. We had a case of controversy that this court determined was basically mooted. It was ended due to the settlement and the settlement... Okay, so you would have us adopt a rule that any time a case is mooted based on standing because of a settlement between the parties before it comes up on appeal that the IPR should be vacated? Yes, I think that would be... To the extent that other parties were in our shoes in those circumstances, we would agree that that should be vacated because that is the relief we're seeking in our case. Would this apply where the board also found the patents invalid or would this just apply where the board didn't find the patents invalid? Your Honor, I understand your question to be the board found the patents invalid and the patentee is taking the appeal as the appellant and then somehow the case of controversy was mooted. Right, well, okay. So just give me a minute to think that through. I mean, so I guess... It's probably not an issue in some circumstances because if the patent owner is the appellant, they're still going to have standing. So maybe my question doesn't matter, but it just seems to me that it could be nuances, for example, depending on how the decision is. I mean, what if there's circumstances in which there would be potentially a cross-appeal? What do you do with a decision like that when you vacate? If there's an automatic vacature whenever a case is mooted by settlement before appeal? I understand your question, Your Honor. So I think let's take the cross-appeal scenario. And again, we're not necessarily arguing for an automatic vacature. It's still within the court's discretion, but the factors that would lead one to get to this result, again, is the live case of controversy that becomes mooted in an issue of a cross-appeal. This court has in the past, I think, has the authority to vacate in part. So this court would rule on the patentee's appeal on the issues, and then the part that is mooted, I think, would be vacated the cross-appeal. Can I ask... I'm a little confused because if the settlement is reached before the appeal is noticed, it seems to me that you lack standing before you've invoked Article III jurisdiction, right? I understand your question. I actually would point the court to a D.C. Circuit case that is very similar where they did apply mungingware in circumstances where you might have thought they called it mootness, but it was actually the same kind of lack of standing that was found in the previous Apple opinion. That is Affleck v. FCC, 129 Fed 3rd at 625. And briefly, the court found that it was an appeal from an FCC decision, and so there was a policy and it was being challenged about political ads and broadcast rights. And by the time the court said it, the mootness had occurred before the case had reached the D.C. Circuit because the FCC had withdrawn its policy. So strike that, because the company asking to buy the policy had sold and went out of business. And so there's the same sort of scenario where you might think it was lack of standing. It was called mootness and the mungingware approach was applied. So I'd say that there's one instance where this sort of scenario happened. But more importantly, in many of these mungingware-type cases, by the time the court is ruling, it doesn't have jurisdiction, right? The case of controversy is resolved. There's no jurisdiction, but it still can act, and that is because the court always has jurisdiction to determine its own jurisdiction and then to take appropriate action. So I appreciate that. Let's let Judge Prost again. I guess I'm a little taken aback and a little troubled by the fact that, I mean, you're making arguments. You're citing a Supreme Court case and a D.C. Circuit case. You're talking about nuanced differences between this case and the earlier case. And unless I've missed a filing in this case, which is not impossible, this is all being heard for the first time by this panel. And, you know, the other side filed a 28-J letter on April 16th that asked that this appeal be dismissed based on the earlier Apple Qualcomm case. And you all, as far as I can tell, never responded to that. Wouldn't that have been the vehicle to put before the court the arguments you're making today? And I guess let me just ask the second part of my question is, it's kind of weird to me because you all asked us last week to vacate the argument. In other words, we would have taken the case at your request just on the papers that existed before this case. And now we're having an oral argument that's making, really, I think as you acknowledge, new arguments, different arguments, new cases which you think are really relevant, important, and supportive of your position that were never cited to us before. So it's just something that strikes me as very odd and, you know, I'm not comfortable with this process here. And I guess I, why did you, if you said you, if you agreed that we should vacate, you were the ones urging we vacate argument, so nothing you're saying today would have been before the panel. Is that correct? Okay, so I'm going to respond to those questions, Your Honor. Respond. So first I'll say, certainly, I mean, I'm trying to respond to the questions that are being asked, and that is implicating to give, you know, intelligent, responsive answers, it's new arguments, and I think that's fair when I'm asked a specific question. So that's first. Second, you know, why did we not put in a Rule 28J letter in response to Qualcomm's letter? I mean, because Rule 28J letters are not supposed to be used to argue substance. They're supposed to talk about precedent. So I don't think a Rule 28J letter would have been appropriate. And then the question in terms of, well, why did we, why did we agree that we didn't have to have oral argument? And I would say on this vacatur issue, it's an issue that the court has the power and some say the duty to go ahead and rule on without a request. And we felt, like, given the amount of briefing on these issues already, that, you know, if the court did not have questions and did not want to talk to us, it was more than capable of resolving these issues, you know, especially the vacatur one, which is well within the court's purview, even without a request. So I apologize. No, I appreciate that. And I wasn't trying to, you know, attack or be combative, but I just really am a little kind of perplexed by why we're here and what's going on. But let me just ask you, what about the Alvarez case that you cited on Munsingware? I mean, that wouldn't have been before the court. At least it would not have been raised before the court. So we would have been left with Bancor and Munsingware, correct? Alvarez had not been cited until I talked about it today. That is fair, Your Honor. But, of course, it's out there. Okay. Thank you. Sorry to take the court's time. All right. So then Alvarez, you're on my time. You have your rebuttal time. Let's hear from the other side. Mr. Franklin? Mr. Franklin? Are you unmuted? May it please the court, Jonathan Franklin representing Pele Qualcomm. Can the court hear me? I hear you. Yes. So I would like to ‑‑ I believe we have an agreement here that there is no standing in the case. If there was a statement made by counsel for Apple that the operative facts here are the same as the facts in the other case, I could go into why whatever the purported issue that she said wasn't decided was decided. I mean, the court looked at the declarations that were submitted in that case, and they concluded that those declarations were insufficient to carry Apple's burden of proof. The declarations in this case are not merely similar to the declarations that were filed in the other case. They are the exact same declarations that Apple made. But these are different patents. Is that right? They're different inventions, Your Honor, but I should point out that in the earlier case there were two different cases involving two different patents. So the very mere fact that there were different patents wasn't a distinguishing feature in those cases, and it's not in this case either, because all the infringement cases were dismissed with prejudice pursuant to the same global settlement, and Apple has submitted the same declarations, which the court before described as the, quote, sparsest of declarations that do not even mention the patents at issue. And Apple has the burden of proof here, and they failed to ‑‑ the prior court, which is a binding presidential opinion, held that they failed to establish the burden of proof on the same declaration, and what Ms. Degnan has admitted in the earlier argument are the same operative facts. Well, on your position that there's no standing, I gather then that you don't object to vacature. We do certainly object to vacature, Your Honor, and we did in our Rule 28J letter in the 418 patent, and I will tell you there are three different reasons why that ‑‑ You can't. And that is the first ‑‑ well, the first reason, let me go through them in order. The first reason is that Apple has waived this argument. They did not make this argument in their opening brief in any of the three cases. The first time it appeared was in the reply brief in the 418 patent case, and as the court knows, it is too late to raise an argument in a reply brief, and I will point out that Munsingwear vacater is not a jurisdictional argument. It is an equitable one, and it can be waived, and interestingly, the support for that is Munsingwear. I was surprised myself. I went back and read Munsingwear. I've always heard this referred to as Munsingwear vacater. If one reads the opinion in Munsingwear, the Supreme Court did not apply Munsingwear vacater in Munsingwear because it held that the party in that case that was asking for it, the United States, had waived the argument by not presenting it below. And so on your theory, would this also waive the automatic estoppel? No, Your Honor. The automatic estoppel is something that applies in a future hypothetical case, which in the prior decision ‑‑ In a future case. In a future case. Is that what the statute says? Yes, and there is no future case here. So that issue the court has held does not create standing in this case because there's been no factual ‑‑ there's been no proof showing that any such future case is likely to occur. So is your position that if a future case occurs, there's no estoppel? No. Our case, our position is, number one, that the existence of a future case is entirely hypothetical, as the court held before. And number two, that if that case were to arise, the statute does say that estoppel is mandated. But for purposes of standing, it doesn't really matter because you have to show in the first place that there's going to be such a future case. And frankly, if there were, if they had shown that there's a future case, the estoppel doesn't really add anything to that. But this is really their argument, Ginnis, that they asked for an immunity for the life of the patent, and it was denied. Their argument, they say that, but what they haven't proved and what the prior panel said they did not prove with the same declarations that are issued in this case is that there would be a likelihood of that future suit being filed because they made no effort to even try to explain how the products, what products they would be making in 2025 or 2027 when these settlement agreements expire, and they did not explain why those products would lead to an infringement argument. And that's the same as, again, Ms. Degen has admitted, and I think it's fair for her to do so, that the operative facts are the same here. If I might get to the second point on Munsingware, Your Honor, and that is simply, and I think it might have been Judge Post who mentioned it, the court never had Article III standing jurisdiction here. And we cited in our Rule 28-J letter a binding precedential opinion of this court called Gould v. Control Laser, and of course Apple never responded to that. But I will quote you from that case at page 1394, and this was cited in our Rule 28-J letter responding to their belated invocation of Munsingware. The court said, quote, This case did not become moot on appeal. Rather, a consent judgment was entered pursuant to the settlement agreement of the parties. The agreed settlement and entry of consent judgment mooted any possibility of an appeal and foreclosed the court from attaining jurisdiction. And then the operative language. The Munsingware requirement of vacating the judgment below when a case becomes moot on appeal, therefore, does not apply. So that's reason two. The court never had jurisdiction. Munsingware applies in a case where there was jurisdiction originally, and the case becomes moot through no fault or action of the party below. And that brings me to the third reason why Munsingware doesn't apply, and I believe it was Judge Prost, and I apologize if it was not Judge Prost, but noted that the Bancorp decision. This is Judge Prost again, Mr. Franklin. Thank you for that. But do you have any response to the new case that your friend on the other side cited, the Supreme Court case in, I think, Alvarez? Are you familiar with that case? I am not familiar with that case, Your Honor, because it was not cited. And, again, it brings me back to, I guess, my first point, and that is if they wanted Munsingware or wanted to try to argue for Munsingware vacater, the first point, the first place when they should have done that was in their opening brief. The second place they tried to do it would be in their reply brief. This was not mentioned there, and that would not have worked because they have to mention the reply. But, again, as Your Honor, I think it was Your Honor, pointed out, they had another opportunity too. We filed a 28-J letter specifically saying that their Munsingware argument was foreclosed by Bancorp. We said that in our letter. They did not respond to it. It's been waived. So I don't have, I'm sorry, Your Honor, I do not have familiarity with that decision. But the reason I don't is because it was never cited. The D.C. Circuit decision that they're now talking about was never cited. And I think Your Honor made an excellent point, and that is the parties agreed that this argument was unnecessary. So now we have Apple coming in and citing new cases at oral argument, which the court has clearly held in numerous cases cannot be done. But this is, you know, this is the third reason why Munsingware doesn't apply. The court doesn't even need to get there because Munsingware clearly applies where a case becomes moot on appeal, not where there was never Article III jurisdiction to begin with. And I guess I think it was Judge Prost again. I'm sorry for the voices, but I think it is Katie barred the door. If the court goes, first of all, excuses the waiver, and second of all, vacate, because it would mean that vacater would be applied any time. The court has never, to my knowledge, ever vacated when it has found a lack of Article III standing to appeal an IPR. That begins with Consumer Watchdog. It goes through Figenics. It goes through the JTK case. It goes through the Apple versus Qualcomm case in April where there was no vacater. The court has never done that. Let me ask you this. This is Judge Newman. Yes. And this is the aspect that I find troubling, that this immunity, whatever it's called from suit, just has a few years to go and that Qualcomm has refused to grant immunity or license for the life of the patents. And this is, as well as I recall the other cases that we're talking about, a significant distinction, a distinction of kind, one which can very well call upon the court's discretion. Is there an answer to that? Yes, Your Honor. First of all, the question that Qualcomm did not give an advance immunity, that was addressed in the prior decision. I'm looking at page 1385. It says Apple argues that Qualcomm's refusal to grant Apple an irrevocable license somehow provides standing. And the court said it did not. And the court has on many occasions held that the mere fact that someone does not give in advance a covenant not to sue or something like that without knowing what products the other party might make in the future doesn't confer standing now. The fact remains, Your Honor, that the operative facts are the same. The declaration that Apple put in doesn't establish, doesn't remotely establish that they will, in fact, be sued in 2025 or 2027 or any point thereafter. I don't think the cases go that far. They do certainly require a certain substance to the physician, but not an absolute guarantee. Isn't that a fair reading? It is absolutely a fair reading, but there is one case that we know goes that far, and that is Apple v. Qualcomm. That case involved the same operative facts here. There is no difference between the facts, the operative facts of this case and the operative facts of the case decided in April. And you're correct. Some cases, the party has been able to make out that showing. In this case, they didn't, and they didn't because they put in what the court described as the sparsest of declarations that did not even mention the patents at issue. And, again, I want to be absolutely clear here for the panel. The declarations that are in all three of these cases here are not merely similar to the declarations that were deemed insufficient in Apple v. Qualcomm in April. They are the exact same declarations. By the same person, signed on the same day, in the same case, they are photocopies. So those cases were not sufficient to establish the threat, Your Honor, that you're speaking of in Apple v. Qualcomm. And by operation of stare decisis, they are clearly insufficient to establish that threat here. And I will say, you are correct, Judge Newman, that the court has on occasion found that there have been showings made. But what the court found in the prior case was that showing was not made by the same declarations under the same operative facts that apply here. If stare decisis means anything, it means that the identical case needs to be decided in the same way. And I do think that the fact that when we filed 28J letters, Apple did not respond. They made no argument that the other case doesn't govern. They make really no argument here today. Ms. Degen says the operative facts are the same. So the operation of stare decisis in this case means that there is no standing. In another case, another party can come in and try to make an argument and say there's going to be a settlement that expires five years from now. But for reasons X, Y, and Z, these patents are likely to be infringed, and the other side is likely to file an infringement case. And perhaps they could make that showing. But they didn't do that in this case. But here they're already a licensee. And aren't the cases and the principles different, or the denial of licensee estoppel, for instance, as opposed to just coming in off the street without commitments? Yeah, yeah. We're not talking about licensee estoppel. That's a separate theory. But in terms of there being a licensee, that was their entire argument in Apple I, or their main argument in Apple I, was that Metamune, the decision in the Supreme Court of Metamune involving a licensee, governed. And what the court held, again, in the binding presidential opinion issued in April was that Metamune did not apply. And Metamune did not apply because Apple made no showing that the continuing payments that it's making under the settlement agreement would be affected in any way by the validity of any of the claims of these patents. And I would just note one thing on that that applies in these cases. Apple actually won on some of the claims in these cases, and Qualcomm decided not to appeal. So Apple actually has findings of invalidity, yet it presented no evidence to the court that those invalidity findings, much less the invalidity findings that it wants this court to make, would have any effect on its payments going forward. I think it's quite telling. Apple made no attempt to make that showing. It makes no attempt to show that it would breach the licensing agreement, which is something that Dana just pointed out in her oral argument. It makes no attempt to say that. But by contrast, the party in Metamune... Well, Your Honor, let me just say this. We're not going beyond precedent here. We're asking the court to apply precedent. The precedent that we're asking the court to apply was a binding presidential opinion issued in April. It addressed all of these issues. It said quite clearly that this is not the Metamune situation. And it said that that doesn't confer standing here because Apple, unlike the party in Metamune, made no attempt to argue that the invalidity of any patent claims would have any effect on its royalties. In Metamune, that was the opposite. The party was saying if the patents are found invalid, we will not have to pay royalties under this agreement. Apple has never said that in a declaration. It's never even alleged it. It's never made a statement about it. It has won on certain patent claims, and it's never said that that has any effect on anything. And that was the reasoning in the prior opinion. So, Your Honor, we're not trying to extend precedent here in any way. All we're asking the court to do is to apply the precedent. And I think by the fact that Apple doesn't have any answer to our 28-J letters or anything to say here at oral argument other than a waived month-and-a-year argument that doesn't even apply to this situation, I think that shows quite clearly that Article III is standing lacking. I would like to just do one thing, and that's just to correct minor errors in our brief, if I could, just related to the expiration dates of the patents. The 861 patent expires in 2031. The 865 patent expires in 2032. And the 418 patent expires in 2033. I apologize for those dates not being in the briefs prior. So, again, we're not asking the court to extend precedent. We're not asking the court to make new law. We're not asking the court to do anything but simply apply the law that the court already established in the binding precedential opinion in Apple v. Qualcomm in April. I think the fact that Apple did not think this argument was necessary in light of that opinion is quite telling. The opinion governs here. It clearly holds that there is no Article III jurisdiction. And, Judge Newman, in a future case, if somebody makes a different showing on different facts, perhaps there would be jurisdiction in that case. But in this case, we know what the answer is. We know what the answer is because the court already decided. Let me just say one other thing on that before I close, and that is the court went out of its way to decide the case. It didn't need to because there was a Phygenics waiver. The party, Apple, had not raised its standing in its opening brief. The court expressly reached the standing, not withstanding the waiver. And one of the things it said in reaching the standing was, quote, the question of standing impacts these and other appeals. The court was aware of these cases when it issued that opinion. It knew that its opinion was going to govern other appeals. Apple knows that, too. That's why they didn't think this argument was even necessary. So, in closing, Your Honor, we are asking only that the court apply the binding precedent of Apple v. Qualcomm and hold that Article III standing is lacking, just as it was in those cases, on the operative facts. Okay. Thank you, Mr. Franklin. Ms. Degnan? Thank you, Your Honor. So, let me start by being very clear. We do not agree that there is no standing in this case. We don't agree, first, that we disagree with the precedential opinion. We know it's binding with respect to this panel on issues it specifically addressed. We do still have appeal rights with that opinion, and I've already identified one argument in these briefs that were not done. So, I just need to make sure the record's clear. We don't agree that there's no standing. However, I would appreciate that. This is Judge Crouse. Just what you said. I just don't understand. You said you don't agree we don't have appeal rights. You don't mean with respect to Apple I. You've exhausted your rights at least before this court, right? What I mean is we have appeal rights beyond this court. We have exhausted our rights before this court. That's correct. Okay. But you agree we're bound by it. For the issues that were specifically decided, yes, of course. Counselor said that we have agreed that there's no standing, and I just can't let that stand. But I do want to address waiver. First of all, this is Judge Stoll. This is Judge Stoll. I was asking a question also. Counsel for Qualcomm said that Apple agrees the operative facts here are the same, and I understand you to be agreeing that the operative facts are the same based on the papers you've submitted to us. But do you disagree with that? No, I think what I've said is that the agreement between Apple and Qualcomm is the same. The dismissal, the prior suit is similar in that these patents were asserted against us. There was a resolution of the district court litigation. So those facts are, and the declarations, I agree, are the same. So those facts are the same. There's no dispute there. Okay. Thank you. Okay. With respect to waiver, quickly, this argument should not be waived. And first of all, waiver is discretionary. And the court excuses waiver when there's a pure question of law, particularly where the issue is narrow or legal, and especially when there's an intervening judicial interpretation of existing law pending appeal. And here, I think it's fair to say this court's precedential opinion in Apple versus Qualcomm marked a significant interpretation of existing law, so it's only fair for Apple to be able to respond to this change or clarification in the governing law by raising our arguments. Counsel, but you did raise this issue. I mean, this Munsingwear issue, that's not a new issue. You knew there was a possibility the court was going to hold that you didn't have standing, and so you could have asked for vacature in any of these cases. In fact, parties do. Isn't that right? So I agree, Your Honor, that we could have made the request earlier, but I'm saying the court — But you did make it in the reply brief of one of these cases, right? We did raise it in the reply brief that was filed after the court's Apple versus Qualcomm opinion. It was filed two days after the opinion came down. We did make the argument, and we would say, given that waiver is discretionary, those are reasons to address the issue. And I will say something counsel said. This court has vacated PTAB decisions before, and I think PPG did it to respond to it. It wasn't even asked for in a reply brief or an oral argument, or at least not in a briefing. It was asked for in briefing. It was. Am I mistaken? That's not what you're saying. It was asked for in briefing after oral argument. You were right about that because the issue didn't come up. The case wasn't mooted until our oral argument, and that's why it wasn't requested until briefing following oral argument. Very good. Thank you, Your Honor. Do you have any cases where we've mooted it, vacated it, where there was no standing by the time the notice was filed? Arguably. I know you're just putting this, but if we conclude there was no standing before the appeal was filed? Two responses, Your Honor. I do not have a case from this court. We do have that AFLAC versus FCC case from the D.C. Circuit, and I will just point out that Gould, Gould or Gould, how you might say it, it doesn't say that it would never be appropriate. It just indicated that under the four square facts of Munsinger it wasn't appropriate, and I would note that that Gould case from 1989 predates the Alvarez case, the Supreme Court case in 2009. But we did not find a case from your court where it was vacated under those circumstances, but the PNC case, I would point out, the Supreme Court, there was no question that case was moot by the time it got to the Supreme Court. The Supreme Court, nevertheless, took jurisdiction. It was moot before the cert petition was filed, but the Supreme Court did, in fact, vacate, in order to vacate, of the board's decision as part of its jurisdiction. If I could say one last thing, please. Yes, please do. So, gentlemen, I have to say I completely agree that the distinction you drew, that Qualcomm's failure to give us permanent rights in these patents, despite having asked for them, and its assertion today that in a future suit there's no question in its mind that 315E estoppel would definitely bar Apple from pursuing a full-throated invalidity challenge, is wholly inconsistent with its assertion that no one could possibly envision that there's going to be future litigation between the parties if Apple were to terminate the agreement for nonpayment or expiration. And I would agree with you that this risk is a good reason for this court to exercise its discretion, hear the vacature issue, and then also vacate these PTAB decisions. Thank you. Okay, thank you. Any more questions from the panel? No, thank you. Thank you. All right. Our thanks to both counsel. The three cases are taken under submission.